UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATUL MINOCHA,<br><br>    Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ, USA LLC,<br><br>    Defendant. | Case No. 21-cv-06868-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 41 |

Plaintiff brings claims against Mercedes-Benz, USA LLC under the Magnuson-Moss Warranty Act ("MMWA") and Nevada's Lemon Law ("NVLL"). (Dkt. No. 1.) Before the Court is Defendant's motion for summary judgment. (Dkt. No. 41.) Having carefully considered the parties' briefing, and with the benefit of oral argument on August 31, 2022, the Court DENIES the motion.

**FACTUAL BACKGROUND**

On January 31, 2021, Plaintiff bought a 2021 Mercedes-Benz G550 Wagon Truck ("G Wagon"), manufactured and distributed by Defendant, from Mercedes-Benz of San Francisco ("MB San Francisco"). (Dkt. No. 51-2; Dkt. No. 52 ¶¶ 3–4.) The price of the car was $178,793.75, a premium of about $20,000 to $25,000 above the manufacturer's suggested retail price. (Dkt. No. 51-2 at 2; Dkt. No. 51-3 at 10.) Plaintiff alleges Defendant supplied a written warranty including a four-year, 50,000-mile "basic" warranty and other warranties outlined in a booklet. (Dkt. No. 1 ¶ 23.)

The G Wagon was delivered to Plaintiff on February 15. (Dkt. No. 52 ¶ 4.) A few days later, the car's check engine light illuminated and Plaintiff brought the car to Mercedes-Benz of Reno ("MB Reno") for repairs. (Dkt. No. 51-4 at 2; Dkt. No. 52 ¶ 5.) Between February and

June, Plaintiff brought the car to MB Reno five more times for the same issue. (Dkt. No. 52 ¶ 6; *see* Dkt. No. 51-5 at 2–7, 9–19.) The car spent more than 60 days at the shop. (Dkt. No. 52 ¶ 6; *see* Dkt. No. 51-5 at 2–7, 9–19.)

In March, Plaintiff contacted Kevin Chan, his salesman from MB San Francisco, asking who he could contact at Defendant, the manufacturer. (Dkt. No. 51-6 at 2–3.) On March 27, 2021, Plaintiff called Defendant's customer service line and, according to Plaintiff, requested a replacement G Wagon. (Dkt. No. 51-7 at 14; Dkt. No. 52 ¶ 9.) In June, according to Defendant, Plaintiff contacted customer service and requested a repurchase. (Dkt. No. 41-2 at 38.)[1] On June 8, Defendant's employee Emmanuel Quainoo "follow[ed] up on [Plaintiff's] repurchase request," telling Plaintiff that Defendant would review his claim over the following four to six weeks. (Dkt. No. 51-7 at 11.)

On July 1, Defendant reported internally that it "agree[d] to repurchase or replace vehicle. . . . Customer . . . should be contacted within 5 business days of this entry to arrange repurchase process." (*Id.* at 9.) The same day, Defendant sent Plaintiff a letter "agree[ing] to repurchase" and stating that "Sedgwick, our transfer agent, . . . will prepare a repurchase offer in accordance with your state lemon law statutes and handle the transaction moving forward." (Dkt. No. 51-8 at 2.) On July 7, Plaintiff wrote to Mr. Quainoo, "Mercedes has decided not to replace my vehicle but buy it back for cash (value to be determined). . . . My understanding of applicable lemon law is that I have the choice of either getting a replacement vehicle or getting cash value for it." (Dkt. No. 51-7 at 7.) On July 21, Defendant's employee Ralph Porco wrote to Mr. Quainoo, "There are no replacement vehicles out there so customer[']s only option is a [buyback]." (*Id.* at 5.) On July 22, Mr. Quainoo wrote: "I told [Plaintiff] that our vendor will be helping him process the repurchase of his vehicle but he[']s only looking for a replacement. . . . [I] said sorry and a [buyback] is his only option at this time[.]" (*Id.*) Plaintiff never received a repurchase offer, he was only told that he would. (Dkt. No. 52 ¶ 12; *see* Dkt. No. 41-2 at 39.)

//

---

[1] Plaintiff's objections to Heather Gurocak's declaration are overruled as moot.

2

**DISCUSSION**

Plaintiff brings claims for breach of express and implied warranty under the MMWA and a claim asserting that the same conduct violates the NVLL. (Dkt. No. 1 ¶¶ 48–69.) Thus, his MMWA claims are based on warranties under state law; there is no allegation that Defendant otherwise violated the MMWA. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008). Plaintiff's complaint seeks a replacement vehicle, among other remedies. (Dkt. No. 1 ¶¶ 58, 67, 69.)

In a section titled "Duties of manufacturer if motor vehicle cannot be conformed to express warranties," the NVLL provides:

> 1. If, after a reasonable number of attempts, the manufacturer, or its agent or authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repair or correction and the defect or condition causing the nonconformity substantially impairs the use and value of the motor vehicle to the buyer and is not the result of abuse, neglect or unauthorized modifications or alterations of the motor vehicle, the manufacturer shall:
>
> (a) Replace the motor vehicle with a comparable motor vehicle of the same model and having the same features as the replaced vehicle, or if such a vehicle cannot be delivered to the buyer within a reasonable time, then a comparable motor vehicle substantially similar to the replaced vehicle; or
>
> (b) Accept return of the motor vehicle from the buyer and refund to him or her the full purchase price including all sales taxes, license fees, registration fees and other similar governmental charges, less a reasonable allowance for his or her use of the vehicle. . . .

Nev. Rev. Stat. § 597.630; *see Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 916 (9th Cir. 2005). Defendant moves for summary judgment on the basis that Plaintiff lacks evidence of a NVLL violation because Defendant offered to repurchase, although not replace, Plaintiff's car.

**A.     Availability of Plaintiff's Legal Theory as a Matter of Law**

Under Nevada law, statutory interpretation "begin[s] with its plain language." *Platte River Ins. Co. v. Jackson*, 500 P.3d 1257, 1259 (Nev. 2021). "When a statute does not yield more than one reasonable interpretation, we deem the statute unambiguous and look no further than its plain meaning." *Id.* (cleaned up). "When a statute is ambiguous, this court determines the Legislature's intent by evaluating the legislative history and construing the statute in a manner that conforms to

3

1    reason and public policy." *Great Basin Water Network v. State Eng'r*, 234 P.3d 912, 918 (Nev.
2    2010).
3         The plain language of the NVLL is ambiguous with respect to whether the buyer or the
4    manufacturer gets to choose between replacement and repurchase. *See* Nev. Rev. Stat. §
5    597.630(1). On one hand, the language "the manufacturer shall . . . [r]eplace . . . or [] [a]ccept
6    return . . . and refund" could be interpreted to allow the manufacturer to choose among options for
7    fulfilling its duty. Here the Court is mindful of a dictum, though of limited value, from the
8    Nevada Supreme Court: "Under NRS 597.630, Nevada's lemon law, . . . [i]f it *elects* to repurchase
9    the vehicle, a manufacturer must refund the full purchase price, less a reasonable amount to
10   account for the buyer's use." *State, Dep't of Taxation v. Chrysler Grp. LLC*, 300 P.3d 713, 715
11   (Nev. 2013) (emphasis added). On the other hand, "the manufacturer shall" might instead mean
12   that the manufacturer must comply with whichever option the buyer demands. And the language
13   that the manufacturer shall "*[a]ccept* return" could be interpreted to imply that the buyer has made
14   an offer to return the vehicle or, at a minimum, assents to a repurchase. That interpretation would
15   create a default duty on the manufacturer's part to replace the vehicle; if the buyer requests to
16   return the vehicle, or assents to the manufacturer's offer to repurchase the vehicle, then the
17   manufacturer shall repurchase the vehicle rather than replacing it. *Cf. Trout v. BMW of N. Am.*,
18   No. 2:04–CV–01466–BES–LRL, 2007 WL 602230, at *4 (D. Nev. Feb. 20, 2007) ("Pursuant to
19   NRS 597.630, a consumer is allowed to *seek* replacement or reimbursement of a vehicle . . . .
20   Under the 'lemon law,' *upon return* of the vehicle, the manufacturer or dealer must refund the
21   buyer . . . ." (emphases added)). Thus, this provision of the NVLL is susceptible of two
22   reasonable interpretations.
23        Therefore, the Court looks to legislative intent and the statute as a whole. *Great Basin*,
24   234 P.3d at 918–19; *see Arguello v. Sunset Station, Inc.*, 252 P.3d 206, 210 (Nev. 2011) ("reading
25   the provisions . . . as a whole, as we must"). In *Department of Taxation*, a manufacturer
26   reimbursed buyers the full vehicle price, including sales taxes, and then sought a refund of those
27   sales taxes from the state. 300 P.3d at 714. The Nevada Supreme Court held that the
28   manufacturer was not entitled to a refund, in part because such a remedy is not included in the

4

NVLL and would be inconsistent with its purpose: "[T]he legislative intent behind Nevada's lemon law was to protect buyers who purchase defective new vehicles. . . . Refunding a vehicle manufacturer for reimbursed sales taxes will not create an incentive for the vehicle manufacturer to manufacture nondefective vehicles." *Id.* at 716; *see Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1175 (D. Nev. 2003) ("Nevada's lemon law is a remedial statute that should be read broadly in favor of the consumers the law was designed to protect . . . ."), *aff'd*, 402 F.3d 912 (9th Cir. 2005); *see also Int'l Game Tech., Inc. v. Second Judicial Dist. Court ex rel. Cty. of Washoe*, 179 P.3d 556, 560–61 (Nev. 2008) ("[R]emedial statutes . . . should be liberally construed to effectuate the intended benefit."). So too here. Allowing a manufacturer to choose between replacing and repurchasing a defective vehicle would not fully incentivize the manufacturer to make nondefective vehicles at the outset.

Moreover, allowing a manufacturer to choose between replacing and repurchasing a defective vehicle would conflict with the consumer interests the NVLL was designed to protect. Consider a buyer who wants a repurchase because she does not trust that a replacement car will be nondefective. Defendant's interpretation of the NVLL would force her to nonetheless accept a replacement if the manufacturer prefers. Or consider a buyer who wants a repurchase. If the manufacturer prefers to replace the vehicle but a comparable one is not available, then the NVLL allows the manufacturer to replace the vehicle with a "substantially similar" one. Nev. Rev. Stat. § 597.630(1)(a). Defendant's interpretation would force the buyer to accept a substantially similar vehicle—not the one she bought—instead of a repurchase. Both examples illustrate that Defendant's interpretation is inconsistent with the statute's purpose.

Another provision of the NVLL supports the Court's interpretation. Section 597.620 provides that if the manufacturer has established an informal dispute resolution process that substantially complies with MMWA regulations, then the buyer "must first submit his or her claim for replacement of the motor vehicle or for refund of the purchase price under that procedure before bringing any action under" the NVLL. *Id.* § 597.620; *see generally* 15 U.S.C. § 2310(a) (encouraging informal dispute settlement procedures). The plain language of "submit[ting]" a "claim for replacement . . . or for refund" gives the buyer the ability to choose between the two.

5

1  And it would not make sense, nor would it accord with the legislative intent to protect consumers,
2  for the buyer to have the ability to choose in the informal dispute resolution process but the
3  manufacturer to have the ability to choose in the courts. *See Salas v. Allstate Rent-A-Car, Inc.*, 14
4  P.3d 511, 514 (Nev. 2000) ("[W]e will construe [the statutory language] according to that which
5  reason and public policy would indicate the legislature intended." (cleaned up)). Defendant has
6  not identified other provisions of the NVLL that support the contrary interpretation.
7  Because the legislative intent and the statute as a whole support the reasonable
8  interpretation that the manufacturer must replace the vehicle or, if the buyer assents, repurchase
9  the vehicle, the Court adopts that interpretation of Section 597.630. Thus, Defendant is not
10 entitled to summary judgment on the basis that Plaintiff's legal theory fails as a matter of law. *See*
11 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B. Genuine Disputes of Material Fact

Separate from the question of law, drawing all inferences in Plaintiff's favor, there is a genuine dispute as to whether Defendant made an offer to repurchase or Plaintiff made an offer to return the car for repurchase. There is sufficient evidence from which a reasonable jury could conclude that Defendant informed Plaintiff it intended to offer to repurchase the car, but did not actually make an offer. (*See* Dkt. No. 51-8 at 2 (July 1: "[O]ur transfer agent . . . will prepare a repurchase offer"); Dkt. No. 51-7 at 5 (July 21: "[C]ustomer[']s only option is a [buyback]"; July 22: "[I] said sorry and a [buyback] is his only option at this time"); Dkt. No. 52 ¶ 12 (Plaintiff attesting he never received a repurchase offer)); *cf. Trout v. BMW of N. Am.*, No. 2:04–CV– 01466–BES–LRL, 2007 WL 602230, at *4 (D. Nev. Feb. 20, 2007) (finding no genuine dispute that manufacturer offered to repurchase); *Belfour v. Schaumburg Auto*, 713 N.E.2d 1233, 1237–38 (Ill. App. Ct. 1999) (finding no genuine dispute that manufacturer offered to replace or repurchase). There is also sufficient evidence from which a reasonable jury could conclude that Plaintiff did not offer to return the car for repurchase or indicate he would assent to an offer to repurchase. (*See* Dkt. No. 52 ¶ 9 (March 27: requested replacement); Dkt. No. 51-7 at 7 (July 7: "My understanding of applicable lemon law is that I have the choice of either getting a replacement vehicle or getting cash value for it."), 5 (July 22: "[H]e[']s only looking for a

6

1  replacement.").)

2  Because there is a genuine dispute as to whether Defendant offered to repurchase or
3  Plaintiff offered to return the car for repurchase, there is a genuine issue for trial as to whether
4  Defendant complied with the NVLL's requirement to "[r]eplace . . . or [] [a]ccept return . . . and
5  refund." Nev. Rev. Stat. § 597.630(1); *see Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528,
6  531 (9th Cir. 2000) ("The moving party bears the initial burden . . . [to show] there is an absence
7  of evidence to support the nonmoving party's case. . . .  [T]he nonmoving party [must then] go
8  beyond the pleadings and identify facts which show a genuine issue for trial." (cleaned up)).

### C. MMWA Reply Argument

In its reply, Defendant makes a wholly new argument about the structure of the MMWA, as opposed to the NVLL. The MMWA allows the manufacturer to "elect[]" repair, replacement, or refund, except that the manufacturer:

> may not elect refund unless (i) [it] is unable to provide replacement
> and repair is not commercially practicable or cannot be timely made,
> or (ii) the consumer is willing to accept such refund.

15 U.S.C. § 2301(10). Defendant thus argues it is entitled to judgment as a matter of law because it was unable to provide a replacement and repair was not commercially practicable or could not be timely made. Because this argument appears for the first time in the reply brief, the Court does not consider it or the evidence submitted on reply. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003); *cf. Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2011) (noting that district court has discretion to consider, or not consider, arguments raised only in reply).

\* \* \*

On the record before the Court, a reasonable jury could find that Defendant did not make an offer to repurchase and Plaintiff did not make an offer to return the car for repurchase. Moreover, an offer to repurchase by Defendant would not negate an essential element of Plaintiff's claim or show that Plaintiff lacks evidence of an essential element of his claim, *see Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000), because the NVLL requires the manufacturer to replace the vehicle or, *if* the buyer assents,

7

repurchase the vehicle.  Accordingly, Defendant is not entitled to summary judgment on Plaintiff's NVLL or MMWA claims.

## CONCLUSION

Defendant's motion for summary judgment is DENIED.

This Order disposes of Docket No. 41.

**IT IS SO ORDERED.**

Dated: August 31, 2022

JACQUELINE SCOTT CORLEY
United States District Judge